OLESON LAW CORPORATION
RAYMOND C. OLESON (Bar #72151)
505 Coyote Street, Suite A
Nevada City, CA 95959
(530) 478-0415  FAX: (530) 478-1001

HALEY & BILHEIMER
John Bilheimer (Bar # 154580)
505 Coyote Street, Suite A
Nevada City, CA 95959
(530) 265-6357 FAX: (530) 478-9485

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LACE MONTGOMERY, | Case No. C 06 00349 CW |
| Plaintiff, | **STIPULATION AND ORDER THEREON** |
| v. | **ALLOWING FILING OF SECOND** |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, METROPOLITAN LIFE INSURANCE COMPANY. | **AMENDED COMPLAINT** |
| Defendants. | |

IT IS HEREBY STIPULATED by and between Plaintiff MICHELLE LACE MONTGOMERY and defendants LINCOLN NATIONAL LIFE INSURANCE COMPANY and METROPOLITAN LIFE INSURANCE COMPANY as follows:

1. The Second Amended Complaint attached hereto as Exhibit 1 may be filed in this matter.

2. Service of the Second Amended Complaint shall be deemed complete upon filing.

3. By stipulating to the Amended Complaint, Defendants do not waive their rights to challenge the Amended Complaint.

4. Defendants may deem to have the Answer already on file constitute their response to the Amended Complaint, or they may, at their discretion, reserve the right to file a new responsive pleading. Such responsive pleading will be due twenty days (20) from the date of

Stipulation                                        1

1  execution of this Order.

|  |  |
|---|---|
| OLESON LAW CORPORATION | SEYFARTH SHAW LLP |
| By: /s/ Raymond C. Oleson | By: /s/ Francis J. Torrence |
| Raymond C. Oleson<br>Attorney for PLAINTIFF | Francis J. Torrence<br>Attorney for DEFENDANTS |
| Date: 4/3/06 | Date: 4/3/06 |

IT IS SO ORDERED:

DATE: 4/6/06

/s/ Claudia Wilken

Hon. Claudia Wilken
District Court Judge

Stipulation                                    2

```
 1  OLESON LAW CORPORATION
    RAYMOND C. OLESON (Bar #72151)
 2  505 Coyote Street, Suite A
    Nevada City, CA 95959
 3  (530) 478-0415  FAX: (530) 478-1001

 4  HALEY & BILHEIMER
    John Bilheimer (Bar # 154580)
 5  505 Coyote Street, Suite A
    Nevada City, CA 95959
 6  (530) 265-6357 FAX: (530) 478-9485

 7  Attorneys for Plaintiff
```

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE LACE MONTGOMERY, | Case No. C 06 00349 CW |
| Plaintiff, | SECOND AMENDED COMPLAINT |
| v. | **JURY TRIAL DEMANDED** |
| LINCOLN NATIONAL LIFE INSURANCE COMPANY, METROPOLITAN LIFE INSURANCE COMPANY. | |
| Defendants. | |

MICHELLE LACE MONTGOMERY (hereafter "PLAINTIFF") complains against LINCOLN NATIONAL LIFE INSURANCE COMPANY and, METROPOLITAN LIFE INSURANCE COMPANY and alleges as follows:

**PARTIES**

1. PLAINTIFF is an individual residing in the State of California.

2. PLAINTIFF is informed and believes, and thereon alleges, that Defendant LINCOLN NATIONAL LIFE INSURANCE COMPANY ("LINCOLN") was and now is a corporation authorized to do and is doing business as an insurer in the State of California and is domiciled in the State of Indiana.

3. PLAINTIFF is informed and believes, and thereon alleges, that Defendant

SECOND AMENDED COMPLAINT                    1

Exhibit 1

METROPOLITAN LIFE INSURANCE COMPANY ("METLIFE") was and now is a corporation authorized to do and is doing business as an insurer in the State of California and is domiciled in the State of New York. Collectively, LINCOLN and METLIFE shall be called "INSURERS".

4. At all times mentioned in this Complaint, the Defendants, and each of them, were the agents, representatives, co-conspirators and employees of the remaining Defendants, and were at all times acting within the purpose and scope of said agency, representation, conspiracy and employment, and each Defendant has ratified and approved the acts of his agent, representative, co-conspirator and employer.

## PLAINTIFF'S BACKGROUND, EDUCATION, TRAINING AND VOCATIONAL EXPERIENCE

5. Plaintiff is a 42-year old woman.

6. Plaintiff graduated from Nevada Union High School in Nevada City, California in 1981. While plaintiff was in high school, she worked as a construction laborer doing roofing, asphalt work, carpentry, electrical and plumbing work. She continued this work until she was 20 years old.

7. Thereafter, plaintiff went to technical school at California Paramedical and Technical College and studied respiratory therapy for about one year. She then worked as a nurse's aid in the Grass Valley Convalescent Hospital and then in or about 1984 obtained a position as a respiratory therapist at Sierra Nevada Memorial Hospital. Other than a short stint as a respiratory therapist at Sutter Coast Hospital in Crescent City, plaintiff remained working as a respiratory therapist at the Sierra Nevada Memorial Hospital until she became disabled. In or about 1997, plaintiff began a correspondence course with California College in order to become a registered respiratory therapist. In or about 1998 or 1999, plaintiff received special training at Loma Linda University Hospital and at Mercy San Juan Hospital in neonatal respiratory therapy. She was thereafter the neonatal respiratory therapy specialist at Sierra Nevada Memorial Hospital. The position of respiratory therapist requires the therapist to be

SECOND AMENDED COMPLAINT                    2


on his or her feet for most of the working day, bending over patients frequently to administer therapy (e.g. insertion of endotracheal tube). The plaintiff's work on young patients (e.g. infants) requires a great degree of focus, stamina, and cognitive thinking in order not to be dangerous for the small babies.

8.   During these times, before plaintiff was disabled, plaintiff was an athletic, energetic women who enjoyed multiple endeavors such as hiking, horseback riding, waterskiing, snow skiing, hunting, fishing, softball, volleyball and other vigorous and strenuous activities. Plaintiff took pride in the fact that she was extremely fit.

9.   Plaintiff married and has given birth to two children, who are also vigorous and enjoy energetic activity.

**DISABILITY POLICY ISSUANCE**

10.  PLAINTIFF purchased from LINCOLN a policy of disability insurance ("POLICY") in or about April 1996. The POLICY is attached to the original complaint on file herein as Exhibit A.

11.  The PLAINTIFF purchased the POLICY in order to obtain protection and peace of mind for herself and her family in the event that she became disabled and was unable to work at her occupation. At that time, PLAINTIFF was a single mother whose children were approximately 9 and 12 years old. PLAINTIFF's children relied upon PLAINTIFF's earnings for support. PLAINTIFF paid a premium for the POLICY in order to purchase "own occupation" coverage.

12.  The POLICY provides, in part, that INSURER shall provide a monthly benefit to the plaintiff in the event that she became disabled.

13.  The POLICY provided that she receive disability payments for two years in the event that she "is unable to perform the substantial and material duties of Your Occupation" and is under a doctor's care. After the first two years, she is considered disabled if "she is unable to perform the substantial and material duties of Your Occupation", is not otherwise working in a "gainful occupation", and is under a doctor's care. Payments under this latter definition are to be paid until PLAINTIFF is 65. Case law further defines and interprets the provisions of

|   |     |     |
|---|-----|-----|
| 1 |     | the POLICY. |
| 2 | 14. | The POLICY also provided that the premium on the POLICY would be waived during such period of time that PLAINTIFF is disabled. |
| 4 | 15. | The PLAINTIFF has paid all premiums and performed all terms, conditions and covenants required to be performed, so as to keep the POLICY in full force and effect, except for those terms, conditions, and covenants, the performance of which was excused, waived, or prevented by the Defendants. |

### DISABILITY

16. In or before September 1999, the PLAINTIFF suffered a back injury which caused her great pain. She sought treatment that was not effective. Despite this pain, she continued to work full time. In April 2001, PLAINTIFF fractured her pelvis. She recuperated for three weeks and then went back to work even though continuing to be in pain. Beginning in or about April 2002, PLAINTIFF began to have pain in her right arm and received treatment for this pain, including three epidural steroid injections in her neck. She continued to work full time despite the pain. In or about April 2003, PLAINTIFF severely injured her back She tried to return to work about a week later but was unable to work. Since that time, the PLAINTIFF has suffered extreme pain. At her doctor's recommendation and because of her past vigorous nature, PLAINTIFF seeks to engage in light physical activities in order to maintain muscle tone and other healthful benefits. PLAINTIFF does not tolerate pain medication well and dislikes the cognitive impairment such medication causes. However, PLAINTIFF occasionally will take pain medication to compensate for the pain that ensues from some activities.

17. As a result of her disability, the PLAINTIFF was unable to work and became disabled under the POLICY. PLAINTIFF stopped working on May 1, 2003.

18. PLAINTIFF's earnings in the years preceding her disability far exceeded the benefit payable under the POLICY.

### PURCHASE OF LINCOLN AND OTHER POLICIES BY METLIFE

19. PLAINTIFF is informed and believes, and thereon alleges, that LINCOLN issued

SECOND AMENDED COMPLAINT                4

thousands of policies similar to PLAINTIFF's. PLAINTIFF is further informed and believes, and thereon alleges, that LINCOLN later determined that the policies it issued were unprofitable, ie. that it was paying out more in claims under these policies than was justified by the amount of premium that was being collected on the policies.

20. PLAINTIFF is informed and believes, and thereon alleges, that METLIFE purchased all or a large block of the private disability policies sold by LINCOLN with the express plan of making these policies profitable by denying a larger number of claims that should have been paid.

21. PLAINTIFF is informed and believes, and thereon alleges, that METLIFE structured this purchase of policies as "reinsurance" and other artifices in an effort to shield itself from liabilities as an insurer. METLIFE fraudulently has represented to the LINCOLN policyholders that it is an "Administrative Agent" for LINCOLN when the true facts are that METLIFE is acting as the purchaser of the policies.

22. PLAINTIFF is informed and believes, and thereon alleges, that METLIFE has pursued this scheme and plan not only with LINCOLN and its policyholders but with other insurance companies who have issued disability policies that were not profitable and sold their disability policies to METLIFE for METLIFE to deny more claims and turn a profit. PLAINTIFF will amend this complaint at such time as it uncovers the true facts and circumstances with respect to these other transactions.

**CLAIM-HANDLING BY INSURERS**

23. The PLAINTIFF made a claim under the POLICY for benefits to METLIFE in or about August 2003. After the 90-day elimination period under the policy, benefits began payable beginning in or about November 2003. INSURERS initially notified PLAINTIFF on October 31, 2003 that they would not pay her claim. The notice did not comply with California law and was an attempted invalid denial. The notice provided that the INSURERS would continue to evaluate her claim. The early denial is part of a pattern and practice to discourage and dissuade the PLAINTIFF from pursuing her claim – stating that there is no basis for her claim to be paid while at the same time stating they will continue to evaluate it.

SECOND AMENDED COMPLAINT            5

24. PLAINTIFF is informed and believes, and thereon alleges, that beginning after the INSURERS realized that they would be liable to pay this claim until PLAINTIFF was 65, it began a policy of harassment, delay, intimidation, lies, unreasonable requests for information and other behavior in order to dissuade the PLAINTIFF from continuing with her claim, in order to "set the PLAINTIFF up" for taking a lesser amount – or no amount at all – under the POLICY, and in order to delay the payment of claims which were owed to the PLAINTIFF. INSURERS, implicitly and by words and action accused the PLAINTIFF of not being disabled, of "faking" her disability, and of attempting to obtain insurance benefits by fraudulent means. The INSURERS began this plan and scheme not for reasons having to do with PLAINTIFF's claim but for reasons of economics and so that METLIFE could make the policies it had purchased from LINCOLN profitable or more profitable.

25. PLAINTIFF is informed and believes, and thereon alleges, that one of the purposes of the INSURERS in taking these actions was to intimidate and threaten the PLAINTIFF and thereby reduce her will and break her spirit so as to have her withdraw her claim.

26. Pursuant to this plan and scheme, the INSURERS took the actions set forth in the following paragraphs among others.

27. INSURERS failed and refused to make payments owed to PLAINTIFF in a timely fashion, knowing full well that PLAINTIFF relied on such payments for her and her families' food, shelter and other necessities and knowing that the constant state of anxiety in which such delay placed PLAINTIFF would break her will.

28. PLAINTIFF is informed and believes, and thereon alleges, that INSURERS sent one or more of its agents, employees or representatives, an investigator or investigators, to spy on PLAINTIFF and intimidate PLAINTIFF in an effort to induce PLAINTIFF to relinquish her claim. The INSURERS' investigator sought to portray himself as a friend of PLAINTIFF in an effort to ingratiate himself with PLAINTIFF so that PLAINTIFF would trust him.

29. The INSURERS sent frequent notices to PLAINTIFF that there was no basis to pay the claim but that they were still investigating, thereby hoping to break the PLAINTIFF's will and spirit over time.

SECOND AMENDED COMPLAINT                6

30. The INSURERS notified PLAINTIFF on May 21, 2004 that they would accept and pay her claim. Less than a few months later, they sent her a notice that they would NOT pay her claim. The first notice that INSURERS would pay was a scheme and artifice to again try to break the PLAINTIFF's will and spirit in pursuing this claim.

31. After the denial, the PLAINTIFF sought to convince the INSURERS to reverse its decision and provided additional evidence to the INSURERS of her disability.

32. Despite the submittal of this information, the INSURERS again failed to make the benefit payments to PLAINTIFF.

33. During the claims process, the INSURERS did not seek to have PLAINTIFF examined by a medical doctor to make a determination as to whether she was disabled under the terms of the POLICY.

34. INSURERS are without a good faith basis for failing to pay this claim to the PLAINTIFF and their failure to pay is unreasonable and unconscionable.

35. As a direct and proximate result of INSURER's failure to pay for amounts owing under the POLICY, the PLAINTIFF has been and is required to pay substantial legal fees and costs to obtain the benefits under the POLICY to which he is entitled, including the initiation of this present Complaint in order to compel INSURER's performance.

### DAMAGE SUFFERED BY PLAINTIFF

36. As a direct and proximate result of the actions of the defendants, and each of them, the PLAINTIFF has not enjoyed the benefits of the policy for which she bought and paid.

37. As a further direct and proximate result of the actions of the Defendants, and each of them, the PLAINTIFF has suffered anxiety, depression, emotional distress, and damage to her body and spirit.

### FIRST CLAIM
### For Breach of Written Contract

38. PLAINTIFF refers to Paragraphs 1-37, inclusive, of the preceding allegations and by

SECOND AMENDED COMPLAINT            7

this reference makes them a part hereof.

39. Defendants have at all times failed, refused and neglected to perform the terms of the POLICY between INSURERS and the PLAINTIFF by failing and refusing to pay the benefits owed under the POLICY as agreed.

40. PLAINTIFF has demanded that Defendants perform pursuant to the terms of the contract, and in breach of the terms thereof, Defendants have failed, refused and neglected to perform.

41. By reason of the foregoing, PLAINTIFF has been damaged by the failure of Defendants to perform pursuant to the POLICY, in an amount within the jurisdiction of the court and which shall be established in accordance with proof at trial.

WHEREFORE, PLAINTIFF prays for judgment as hereinafter set forth.

### SECOND CLAIM
### For Declaratory Relief

42. PLAINTIFF refers to Paragraphs 1-41, inclusive, of the preceding allegations and by this reference makes them a part hereof.

43. On or about August 2004, Defendants informed PLAINTIFF that they would not make payments to PLAINTIFF under the provisions of the POLICY.

44. PLAINTIFF believes that as long as she is suffering from the conditions, or some of them, that she currently is suffering from, she is disabled under the terms of the POLICY.

45. An actual controversy has arisen between the parties as to whether PLAINTIFF is entitled to benefits under the POLICY and as to what conditions entitle the PLAINTIFF to receive benefits under the POLICY.

WHEREFORE, PLAINTIFF prays for judgment as hereinafter set forth.

### THIRD CLAIM
### For Tortious Breach of the Implied Covenant

46. PLAINTIFF refers to Paragraphs 1-45, inclusive, of the preceding allegations and by this reference makes them a part hereof.

SECOND AMENDED COMPLAINT                8

47. Defendants have breached their obligations of good faith and fair dealing toward the PLAINTIFF by, among other matters, the following actions:

    a. All of the actions as set forth above.

    b. Denying POLICY benefits to the PLAINTIFF;

    c. Unreasonably failing to pay benefits due under the POLICY to PLAINTIFF;

    d. Failing adequately to investigate the claim submitted by PLAINTIFF which would have disclosed that the benefits due under the POLICY were required to be paid;

    e. Placing the interests of the Defendants in front of those of the PLAINTIFF;

    f. For the sole purposes of avoiding payment due under the POLICY, and wearing down the PLAINTIFF until her financial and emotional resources were spent, INSURER, in breach of its covenant of good faith and fair dealing, intentionally, maliciously, and oppressively refused and failed to pay benefits and took the other actions set forth above.

    g. Representing in the POLICY that Defendants would make payments upon the disability of the insured knowing that such representation was false and fraudulent;

    h. Failing and refusing to pay the benefits under the POLICY while knowing that PLAINTIFF was legally entitled to recover benefits under the POLICY;

    i. Making misrepresentations in an effort to prevent PLAINTIFF from obtaining the benefits under the POLICY to which she is entitled;

    j. Delaying in the handling of PLAINTIFF's claim

    k. Failing to obtain a medical examination of the PLAINTIFF;

    l. Spying and invading upon the privacy and solitude of the PLAINTIFF and her family;

    m. Other matters which will be proven at trial.

48. As a direct and proximate result of Defendants' wrongful conduct as herein alleged, PLAINTIFF was compelled to retain legal counsel to negotiate with Defendants on her behalf and to bring this suit, all to her damage.

49. As a further direct and proximate result of Defendants' wrongful conduct as herein alleged, PLAINTIFF sustained severe emotional and mental distress and anguish,

SECOND AMENDED COMPLAINT            9

embarrassment, mortification, humiliation, and indignity, all to her general damage in an amount according to proof at trial.

50. Defendants' wrongful conduct as herein alleged was done intentionally and was malicious, oppressive, and fraudulent in nature and PLAINTIFF is therefore entitled to recover punitive damages in an amount according to proof at trial.

WHEREFORE, PLAINTIFF prays for judgment as hereinafter set forth.

### FOURTH CLAIM
#### For Negligent Infliction of Emotional Distress

51. PLAINTIFF refers to Paragraphs 1-41, inclusive, of the preceding allegations and by this reference makes them a part hereof.

52. The defendants had a duty to exercise due care toward PLAINTIFF.

53. The defendants had a duty to exercise the utmost care in its relationship with its insured, the PLAINTIFF.

54. The defendants knew, or should have known, that their failure to exercise due care in the performance of their responsibilities to the PLAINTIFF would cause PLAINTIFF severe emotional distress. In particular, the defendants knew, or should have known, that their denial of PLAINTIFF'S claims, and other actions taken by them, would cause such emotional distress.

55. The defendants breached their duty of care toward the PLAINTIFF.

56. At all times relevant hereto, the conduct of the defendants was negligent. As a direct and proximate result of such negligence the PLAINTIFF suffered humiliation, mental anguish and emotional distress all to her damage in amounts according to proof. PLAINTIFF will seek leave to amend this Complaint when the same have been fully ascertained.

57. As a direct and proximate result of said Defendants' conduct, PLAINTIFF has suffered and continues to suffer substantial economic losses, all to her damage in amounts according to proof, but in excess of the jurisdictional minimum of this court.

WHEREFORE, PLAINTIFF prays for judgment as hereinafter set forth.

SECOND AMENDED COMPLAINT                    10

## FIFTH CLAIM
### For Intentional Infliction of Emotional Distress

58. PLAINTIFF refers to Paragraphs 1-41, inclusive, of the preceding allegations and by this reference makes them a part hereof.

59. In addition to the allegations previously set forth and incorporated herein, Defendants' conduct was extreme and outrageous.

60. At all times relevant hereto, the conduct of said Defendants and each of them was intentional and malicious and was done for the purpose of causing PLAINTIFF to suffer humiliation, mental anguish and emotional distress. In their conduct as alleged herein, Defendants, and each of them, acted with wanton and reckless disregard of the consequences to PLAINTIFF.

61. By reason of the wrongful and malicious acts of Defendants, PLAINTIFF has suffered extreme and severe mental anguish and has been injured in mind and body as follows: fear, shock, anxiety and pain all to PLAINTIFF's general damages.

62. As a direct and proximate cause of the conduct above alleged, PLAINTIFF has sustained damages in an amount according to proof. PLAINTIFF has been subjected to economic losses, including attorney's fees, wage loss and other expenses, inconvenience and humiliation, and has suffered mental and emotional distress and discomfort, all to her detriment and damage in amounts according to proof.

63. Defendants committed the acts alleged herein maliciously, fraudulently and oppressively, with the wrongful intention of injuring PLAINTIFF, from an improper and evil motive amounting to malice, and in conscious disregard of PLAINTIFF'S rights. PLAINTIFF is thus entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof at trial.

WHEREFORE, PLAINTIFF prays for judgment as hereinafter set forth.

SECOND AMENDED COMPLAINT                    11

### SIXTH CLAIM
### For Brandt Fees

64. PLAINTIFF refers to Paragraphs 1-63, inclusive, of the preceding allegations and by this reference makes them a part hereof

65. Inasmuch as PLAINTIFF was required to bring this action in order to enforce her rights under the POLICY, PLAINTIFF is entitled to her attorneys' fees.

WHEREFORE, PLAINTIFF prays for judgment as hereinafter set forth.

### SEVENTH CLAIM
### For Injunctive Relief and Restitution Pursuant to
### Business & Professions Code Section 17200 et.seq

66. PLAINTIFF refers to Paragraphs 1-65, inclusive, of the preceding allegations and by this reference makes them a part hereof.

67. PLAINTIFF is informed and believes and thereon alleges that defendants have engaged in and continue to engage in unlawful claims practices as alleged above.

68. PLAINTIFF is informed and believes and thereon alleges that the insureds of defendants have been denied coverage and will continue to be denied coverage due to the unlawful claims practices of the defendants.

69. PLAINTIFF is informed and believes and thereon alleges that no adequate remedy at law lies for defendants' continuing violations.

WHEREFORE, PLAINTIFF prays for relief as hereinafter set forth.

### EIGHTH CLAIM
### For Conspiracy and Collusion

70. PLAINTIFF refers to Paragraphs 1-69, inclusive, of the preceding allegations and by this reference makes them a part hereof.

71. PLAINTIFF is informed and believes, and thereon alleges, that defendants are part of a conspiracy and plan to deprive PLAINTIFF of her rights under her POLICY.

72. PLAINTIFF is further informed and believes, and thereon alleges, that the acts set forth above were part of this conspiracy and plan.

WHEREFORE, PLAINTIFF prays for relief as follows:

### PRAYER FOR RELIEF

1. For damages in an amount according to proof for breach of contract;

2. For a declaration of PLAINTIFF'S rights under the POLICY of insurance, and in particular, for a declaration that PLAINTIFF is entitled to receive benefits under her POLICY so long as she has any of her current medical conditions;

3. For general and compensatory damages including, but not limited to, injuries resulting from humiliation, mental anguish, anxiety and emotional distress according to proof;

4. For prejudgment interest in an amount to be proved at the time of trial;

5. For punitive damages in an amount to deter and make an example of defendants;

6. For attorney's fees incurred herein, and in the handling of the claim;

7. For a permanent injunction under the Seventh Claim enjoining defendants, their agents, successors and employees and those acting in concert with them from engaging in each of the unlawful practices, policies, usages and customs set forth herein;

8. For an award of restitution on the Seventh Cause of Action to all persons who were injured as a result of the unlawful practices, policies, usages and customs set forth herein;

9. For costs of suit incurred herein; and

10. For such other and further relief as the Court may deem proper.

Dated: March 9, 2006

HALEY & BILHEIMER

OLESON LAW CORPORATION

By: _____
Raymond C. Oleson
Attorneys for PLAINTIFF

SECOND AMENDED COMPLAINT                 13